Counsel, you may proceed. Good morning, Your Honors. May it please the Court? Jeffrey Buchholz for Helens HRH. This case presents a straightforward question of insurance coverage. Does the pending and prior litigation exclusion in this policy require only a but-for connection between an earlier claim and the claimant issue, or, as nearly every court to address the issue has held or suggested, is the key whether there is a substantial factual nexus between the two claims? So are you conceding that the contract language is unambiguous? No, Your Honor. I'm certainly not conceding that it's unambiguous. I think you were. So don't we have to first decide that question before we get to the nexus issue? The district court found that it was unambiguous and then proceeded to address the second question. The district court never addressed whether there is a substantial factual nexus because the district court agreed with the others. Well, the district court found that the contract language was clear and therefore binding on your client and that this amounted to prior pending litigation and that it arose out of it. You're right, Your Honor. All I was trying to say is the district court's holding is just that there was a but-for connection. That's all that Indian Harbor argued. That's all the district court found. That's all that exists. I'm not sure that but-for is the right. What the district court said is there is an accepted practice in the insurance industry to exclude coverage for prior pending litigation. I find that as a matter of contract law, that exclusionary language is unambiguous. And then the district court proceeded to apply it and found that it encompasses this E&O claim that arises out of the failure to place workman's compensation coverage for Ryan O'Leary. I think the first place, Your Honor, where the district court went wrong is in deciding in isolation that this exclusion language was unambiguous instead of, as the California decisions and the New York decisions equally require, considering the exclusion language in the context of the policy as a whole, considering the policy in the context of the type of insurance that it is, the type of business that the insured is in, what the objective is. But those are the indicia of what you do if you find ambiguity. You go to the next step. But isn't the threshold question what does the language say? No, Your Honor. That's not the way the California courts have approached it. In American Alternative Insurance, a case that we quote at length in our reply brief, the California Court of Appeal expressly said that's not the way that you go about it. The way that you go about finding ambiguity is first you have to look at the context. First you have to look at the objective expectations of the insured. First you have to look at the presumption that the language is unambiguous until an ambiguity has been identified. Isn't that the logical way to go about pursuing insurance policies? If this were a statute, Your Honor, that would certainly be the logical way of going about it. Why should it be any different for an insurance policy? Well, the simple answer, Your Honor, is the California courts have said that it should be different. The California Supreme Court in McKinnon in 2003 unanimously said that insurance policies have to be interpreted differently from statutes. The California Supreme Court addressed the question whether the dictionary definitions approach that one side was arguing there was approached. It almost put air quotes on dictionary definitions. It could barely conceal its derision for the concept that dictionary definitions control in the insurance context. Similarly, in Safeco before it, in AIU before that, in Montrose before that, the California Supreme Court has over and over again, without any ambiguity about its approach, said that insurance policies are different from statutes. In Montrose, I'm sorry, AIU, the question was whether CERCLA language about the type of relief that was recoverable under CERCLA, how that connected up to the language in an insurance policy. And the California Supreme Court went out of its way to say we don't really care about what CERCLA says. We don't really care what the technical terminology used in the statute is. This isn't a statute. This is an insurance policy. And in Montrose, the California Supreme Court. What's wrong with the district court looking at the language of the exclusion and then looking to the meaning within the industry of what a PPNL exclusion is normally considered? And concluding in this case that it did indeed address the claim that your client is bringing and it's excluded under the contract. Because the district court got that wrong, Judge Talman. The district court didn't consider the context of the industry at issue. The district court didn't consider the fact that our client is an insurance broker. And this E&O coverage only covers professional negligence in being an insurance broker. And the typical way that a claim for professional negligence against an insurance broker would arise is exactly the way that the claim here came about, which is we sell insurance to a client. A client then has something happen involving a third party. The third party brings a claim against the client. And that's how the client figures out that the insurance that it bought wasn't adequate or wasn't what it thought it was or whatever the issue may be. And then the client turns around and brings the malpractice claim against us. That's the way that the context at issue here. That's the insurance that we bought. With the district court's analysis, I'm looking at a whole section that begins at the record 007, which is page 5 of the district court's lengthy minute order. And it goes on for several pages talking about what the meaning of PPNL clauses are as the courts have applied them in various situations within the industry. Isn't that what the district court was doing? Or am I completely misreading the court's analysis? Well, Your Honor, with respect, I think a little bit of both. First, to take the second part. Am I wrong or he's wrong? Well, both. That's why I said with respect. Get me back on track. The district court did precede its analysis of the legal issue presented on the facts of this case with a discussion about PPL exclusions as a general matter. But the district court's real analysis, its holding, was that there was a but-for connection between the two claims here, and that was sufficient. Indian Harbor now tries to run away from that, but they can't. If you look at the briefs in the district court, the only argument Indian Harbor made was there was a but-for connection. Its opening brief used the words but-for twice. Its proposed order used the same words. Its reply brief used those words twice, and the district court's order on page 6 repeated, almost verbatim, the language that the Indian Harbor had used in its reply brief. That's the district court's holding. The district court did not. Well, I agree with you on page 8, excerpt from record 8, which is page 6 of the district court's order, and the paragraph at the bottom of the page. He is clearly talking about but-for, but then he goes on to apply the language right out of the contract arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the man action. And why is he wrong for applying the unambiguous language of the contract to the nexus between the man and the Williams action? First, Your Honor, because, as I tried to explain earlier, you don't get to the question of whether the language of the exclusion is unambiguous or is ambiguous until you first consider the context, the reasonable expectations of the insurer, the understandings in the industry, et cetera. That's the way the California Supreme Court has made clear that insurance policies, and in particular exclusions, are supposed to be interpreted. Well, what's all this citation starting on page 5 to all these cases in the insurance industry that talk about these clauses? The district court cited cases involving PPL exclusions, but almost all of those cases apply the substantial factual nexus approach, which is what we're arguing for, and not a mere but-for approach, which is what Indian Harbor argued for and the district court adopted. The district court cites Dunn and Schein. Where I'm losing your argument is that he certainly uses the phrase, but for the failure to obtain workers' compensation for coverage for rhino linings, the man action would not have been permitted to proceed as a matter of law, and there would have been no liability or judgment which provided the basis for rhino linings' principal claim against HRH of California. But then he goes on to talk about that that action meets the contract linings, that it arises out of, it's directly, et cetera. Right, Your Honor. But the only reason that the court said that the connection between the two actions met the exclusion language is because there was a but-for relationship between the two actions. If Your Honors look at the cases, including the ones the district court cited. I'm reading it the same way you are. Maybe that's where I'm having trouble. Let me try to address the question this way, then. If Your Honors look at the other cases involving PPL exclusions, like Dunn and Schein, like ML Direct, like Church, and all the cases that the parties cite, almost all of those cases apply a very different approach from the district court's decision here. Those cases apply a substantial factual nexus approach. Some of them actually hold that's the right approach. Some of them don't actually hold, but that's the approach that they follow. Those cases are on a spectrum of different facts. Some of them find the exclusion applies. Some of them find the exclusion doesn't apply. None of the nuances about that case law are really what matters in this case. All that matters in this case is whether the basic substantial factual nexus approach is appropriate, or whether, on the other hand, a mere but-for connection is all that's required. Aren't words arising out of, directly or indirectly, resulting from, in consequence of, or in any way involving exactly what you're arguing? Your Honor, if this were a statute, we'd lose. Because in the context of the statute — I understand your argument that we look at these things differently than statutes, but I'm just applying, as I think the district court did, the contract language and asking why it is an unreasonable analysis to conclude, in applying the contract language, that these matters arise out of or have a nexus to each other. Judge Talman, with respect, you're applying the contract language of the exclusion as if it were a statute. And that's what the California Supreme Court has emphasized that you can't do. The California Supreme Court, in case after case over generations, has said insurance policies are different from statutes, and in particular disputes about coverage between an insured and an — Don't the words mean what I want them to say instead of what they actually say? Is that your argument? Well, Your Honor, this Court is in the position of applying state law. This Court takes state law as it finds it. The California courts are not a bastion of textualism. Neither, for that matter, are there New York courts. And so, again, if this language were in a statute, then maybe even the California courts would apply it to read the literal words for all they can bear, as far as the English language can take them. But it's not. It's an insurance policy. And in particular, it's not just an insurance policy. It's an exclusion. And the California Supreme Court has said that you have to apply insurance policies — excuse me, you have to interpret insurance policies to maximize coverage, to provide the maximum coverage that you can wring out of the words of the statute. You apply coverage provisions broadly. You apply exclusions narrowly. And the insurer bears the burden of proving that there's no other interpretation that the words can bear. Thank you very much, counsel. You have exceeded your time. Your time is up. Thank you. Thank you, Your Honor. We'll hear from the insurance company. Thank you, Your Honor. Jack Gerstein on behalf of Indian Harbor. I'd like to start by saying Judge O'Scanlan was right and the judge was right, that the judge did properly apply the law. His opinion is extremely well written. And the use by HRH of the taken-out-of-context words but for is really somewhat disingenuous in context, because there's no rational person would ever say that the Williams action did not arise from, result from, was in consequence of, or involve the Mann action. That's all it was about. So the judge properly interpreted it. To the extent counsel has suggested that this Court should strain to find an ambiguity, actually the authorities cited in both briefs are to the contrary. First of all, California Civil Code Section 1639 expressly dictates that the intention of the parties is to be ascertained from the writing alone if possible. In the AIU case, which was cited to Your Honors, the Court actually said mutual intention of the parties at the time of contract, contract is formed, governs interpretation. Such intent is to be inferred if possible solely from the written provisions. This Court, the Ninth Circuit, in the Spectrum Worldwide case in 2009, said the party's intent should be inferred solely from the written provisions of the contract. As the Court may be aware, there's some dispute as to whether New York law or California law governs, but everyone has conceded it doesn't change the result here. In New York, the Court has said if the agreement, in the Greenfield case, if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity. So the law supports exactly the literal reading of the language, but just to be clear, this is the eighth largest insurance broker in the world, HRH. Their job is to understand policy language. This was a negotiated contract, which takes it out of the realm of some of the authorities that the other side has cited, because under Garcia, in the Fireman's Fund case that we cite in our brief, where it's a negotiated contract, some of the contra-preferential rules do not apply, and I would argue here a four-share or a one of the largest brokers in the world who knows the policy language and has the opportunity to negotiate the policy language, I think it still lies in their mouth to seek harbor and provisions that are to protect, for lack of a better word, the innocent insurer who doesn't know what the policy says or has no ability to bargain. Here, significantly, this sophisticated broker entered into the contract after the Sunshine case in New York had broadly applied, I'm going to call it the PPL endorsement to make it short, and the ML Direct case in California likewise had broadly applied it. So here it is, a sophisticated broker whose job it is to know policy language, have an opportunity to negotiate, reading the very broad language of the contract, which expressly covers the situation, and now is complaining that the law shouldn't be as it is. It's not right, and it's certainly not right in this circumstance with this insured. There's just no question that the Williams action arose out of, was a consequence of, and resulted from the Mann action, and only one of those had a control over the policy. In fact, all of them are. I thought, I've read it many times now, but Judge Walter's decision just walks through the elements, walks through the law, and I thought, candidly, I thought he did a great job. That's all I have to say. Thank you, Counsel. The case just argued will be submitted for decision, and we will hear argument in United States v. Isu.
judges: Lefkow, O'scannlain, Tallman